### SISTARE et al. v. OLCOTT.

(Supreme Court, General Term, First Department. March 29, 1889.)

NEW TRIAL—NEWLY-DISCOVERED EVIDENCE—SUFFICIENCY.

In an action for conversion of shares of stock pledged to secure a loan from defendant to plaintiffs, it appeared that plaintiffs held the shares as collateral security for a debt of H., the owner, to them, and that defendant had delivered the shares to H., who sold them. Defendant contended that this was done with plaintiffs' consent; but it was denied by plaintiffs. After a finding for plaintiffs, defendant offered, in support of a motion for a new trial, on the ground of newly-discovered evidence, an affidavit of another shareholder of the same stock that he also had obtained a loan from defendant on his shares; that defendant called the loans on that stock; that H. was then endeavoring to sell his shares; that one of the plaintiffs stated to affiant that H. had promised him to sell the shares. Afterwards this plaintiff informed affiant that H. had sold the shares, and taken a load off his mind. This affidavit was contradicted by the plaintiff in question, who was tha principal witness for plaintiffs. Defendant did not know until shortly before the application for a new trial that affiant could testify to these facts. Held, sufficiently probable that such evidence would change the result to justify granting a new trial.[1]

Appeal from special term, New York county.

Action by William H. M. Sistare and George K. Sistare against Frederic P. Olcott, receiver of the Wall Street Bank, to recover $40,000 damages for the alleged conversion by the Wall Street Bank of 105 shares of stock of the American Printing Company and 250 shares of stock of the Youghiogheny Coal Company, growing out of the following alleged facts: On May 14, 1884, plaintiffs borrowed from the Wall Street Bank $30,000, and secured the loan by the said stock. On May 16, 1884, the plaintiffs paid $10,000 on account of the loan. The plaintiffs claim that a sale of the coal stock about May 20, 1884, was made, without their consent or knowledge. Defendant appeals from an order denying a motion for a new trial on the ground of newly-discovered evidence.

Argued before VAN BRUNT, P. J., and BRADY and DANIELS, JJ.

Thomas G. Shearman and Everett P. Wheeler, for appellant. Henry S. Bennett, for respondents.

DANIELS, J. The complaint in the action was for the conversion of shares of stock owned by William J. Hutchinson, a director of the Wall Street Bank,

---

[1] In general, as to when a new trial will be granted on the ground of newly-discovered evidence, see Plyer v. Insurance Co., 1 N. Y. Supp. 395, and note; Burns v. People, (Ill.) 18 N. E. Rep. 550; Railroad Co. v. Sullivan, (Ill.) 17 N. E. Rep. 460, and note; Wimpy v. Gaskill, (Ga.) 7 S. E. Rep. 156, and note; Gilmore v. Brost, (Minn.) 39 N. W. Rep. 139, and note.

.and by him pledged to the plaintiffs, to secure money owing to them.   They used the shares to secure the sum of $30,000 which they borrowed from the bank. · After the loan was made, they paid to the bank the sum of $10,000, reducing it to $20,000; but the shares of stock were still left with the bank as security for this remaining sum of money.   The bank delivered to Hutchinson 250 shares of the coal company's stock, forming the principal part of this security.   He sold the shares to William L. Scott, at the rate of 80 per cent. of their face value.   When this disposition of the stock was discovered by the plaintiffs they offered to pay the amount still remaining secured by the shares, and demanded these shares of stock, as well as the other shares held for the same purpose by the bank.   They were not delivered, and this action was brought for their conversion.   The defense in the action, as it was chiefly presented, was made upon the affirmation that Hutchinson had received the shares of the coal company's stock under the authority of the plaintiffs, and had sold them with their assent.   The evidence of·Hutchinson as it was given upon the trial, had a direct tendency to establish this fact; but it was denied by the witness William H. M. Sistare, the one of the plaintiffs with whom the business had been done.   The respective credibilty of these witnesses was assailed by the party against whom his evidence was given. There was other evidence in the case, but not of a decisive character, and altogether it presented a close question of fact, which the referee appears, not without hesitation, to have decided in favor of the plaintiffs.   In support of the application for a new trial affidavits have been produced on behalf of the defendant, who is the receiver of the Wall Street Bank, having no personal knowledge of the business, establishing the fact that Thomas Murphy, a broker residing at No. 27 East Sixty-First street, in the city of New York, will be able to testify that he also had obtained a loan from the Wall Street Bank, secured by stock of the same coal company, and that from a disturbance in the market the cashier of the bank was anxious to have the loan paid, and this stock, which also belonged to Hutchinson, redeemed.   He states that he was informed of this other stock of the same company being held as security for the loan made to the plaintiffs, and that increased the urgency of the cashier to secure the payment and redemption of the stock.   He states that he went to Mr. Hutchinson and informed him that his own loan had been called, and that in reply Hutchinson referred to the fact of this other stock being held by way of security for the loan to the plaintiffs.   The interview, as it is given, proceeded further, in the way of disclosing information to Mr. Murphy that Mr. Hutchinson was negotiating for the sale of the stock to William L. Scott, and he requested Mr. Murphy to go to the bank and make that statement there, but not to furnish information as to the person with whom the negotiations were proceeding.   He states that he did so, and, after a conversation with the cashier of the bank, met the plaintiff William H. M. Sistare and spoke to him concerning the loans and the efforts which Hutchinson was making to dispose of the coal stock.   He states that Sistare replied to him that Hutchinson had promised him the same thing,—that is, to endeavor to dispose of the stock,—but he did not place great confidence in his efforts.   Murphy states that in a few days after that he again went to the bank, and ascertained that Hutchinson had sold the coal stock, and taken up the loan which had been made to himself.   As he was leaving the bank he says that he informed Sistare that his loan had been taken up, and that Sistare replied that his own loan had been taken care of, as "William" (referring to Hutchinson) had succeeded in selling the coal stock, and taken a load off his mind.   This evidence, given upon the trial of the action, would have had an important bearing in the way of sustaining the testimony of Hutchinson that he sold the coal company's stock under the authority of Sistare, one of the plaintiffs, and might be considered so far corroborative of the other evidence produced by the defendant as to result in a favorable determination

for him concerning the liability for these shares. It is not necessary, to sustain an application for a new trial because of newly-discovered evidence, that the evidence should appear to be so cogent and reliable as certainly to bring about a result favorable to the party making the application; but it is sufficiently within the rule that it may probably be attended with this result. And where that appears to be the effect of the newly-discovered evidence, if the other rules applicable to the motion are complied with, it is the duty of the court to set aside the preceding decision, and afford to the party defeated an opportunity to sustain or protect himself, if he may be able to do so, by the additional and newly-discovered evidence.

The plaintiff William H. M. Sistare has denied in his affidavit these conversations, and states that nothing transpired between himself and Murphy justifying the affidavit made by the latter. But it does not follow from this denial that the application should be defeated; for Sistare was the principal witness in behalf of the plaintiffs upon the trial, and it is to meet and overcome his evidence, by adding this newly-discovered testimony to that of Hutchinson, that the application has been made, and, as the case was evidently close and critical by reason of the direct contradiction arising between Sistare and Hutchinson upon the trial, this additional testimony of Murphy may turn the scale in favor of the defendant, notwithstanding the positive affirmations made to the contrary by Sistare in his affidavit, as well as in his evidence given upon the trial. What the effect may be of this additional testimony cannot now be as well determined as it can be when the witnesses are all before the tribunal whose ultimate duty it must be to decide the question of credibility arising between them. This statement of Murphy is assailed as improbable, for the reason that he and Hutchinson have been upon very friendly terms and are related to each other; and it has been insisted, with a fair degree of probability, that, if what Murphy now states to have been the interviews had taken place between himself and Sistare, he would have disclosed them to Hutchinson before the trial was concluded, resulting in the judgment; and that undoubtedly is a fair matter of observation, on the relations of these two persons. But it does not appear in the case that anything transpired between Hutchinson and Murphy that would naturally have drawn the latter out upon this subject. Murphy was sworn as a witness upon the trial of the action. His testimony was given in behalf of the plaintiffs, to establish a circumstance of no very great importance; and, if it had been understood that he could have given this evidence in favor of the defendant, there is every reason for supposing that he would have been interrogated concerning it on his cross-examination, or by being afterwards recalled as a witness on behalf of the defendant. If Hutchinson had understood that this testimony could have been obtained from Murphy, it would have been to his interest, as well as that of the receiver of the bank, to produce it and submit it to the referee. But, to meet this objection, Mr. Hutchinson, in his affidavit used in support of the motion, has sworn that he only received the information as to the ability of Murphy to give this evidence a short time before the application was made, and that it came out, in the course of preparing another litigation for trial; that it was obtained by the attorneys in that case, who supplied Hutchinson with the information that Murphy was able to give this evidence. Mr. Murphy, in his affidavit, corroborates this statement of Hutchinson, and adds that he had not spoken previously, to any person on this subject. The attorney for the defendant, by his affidavit, states that he received the information concerning the ability of Murphy to give the evidence in this manner, and at once took steps to obtain from Mr. Murphy an authenticated statement of what he would be able to give as evidence upon another trial of the action. The receiver has also sworn that he did not know of any evidence which Mr. Murphy could give until he was informed of the facts by his attorneys on the last day of April, 1888. There appears, therefore, to have been no omission what-

ever either on the part of the receiver or on the part of Mr. Hutchinson,—for whose conduct however the receiver is not responsible,—in the way of searching out and discovering the existence or ability to produce this additional testimony. No event arose, inducing either to make it the subject of inquiry, unless it possibly might be that Hutchinson should have suspected, as Murphy was interested in the coal company's stock which was sold to Scott, that he might have ascertained something from Sistare that would be valuable in the way of evidence for the support of the defense. But there was no fact appearing that would probably suggest the existence of this evidence even to his mind; for it does not appear that he understood that Murphy and Sistare had had any conversation on the subject of the disposition of this stock to Mr. Scott. The motion for a new trial was made with diligence, after the discovery of the ability to produce this evidence; and the tenor and effect of the authorities are such as to entitle it to prove successful. *Huebner* v. *Roosevelt*, 7 Daly, 111; *Bonynge* v. *Waterbury*, 12 Hun, 534; *Silver-Plate Co.* v. *Barclay*, 48 Hun, 54; *Parshall* v. *Klinck*, 43 Barb. 203. The evidence is not liable to the objection that it is cumulative, for it relates to interviews concerning which no testimony was given upon the trial already had. They are distinct and separate occurrences from those brought into the action by either of the parties; and when that is the nature of the newly-discovered evidence the application cannot be defeated by invoking the rule that the evidence must not be cumulative. This rule rests upon no substantial principle of justice. On the contrary, where it applies it stands in the way of the attainment of the right, and it should be restricted therefore, precisely to the cases coming within its established limits, and they should by no means be extended to include other or different cases.

It appears by the case that the judgment entered upon the report of the referee has been affirmed by this general term,[1] and from the judgment of affirmance an appeal has been taken by the defendant to the court of appeals. This appeal must necessarily be discontinued, upon an order being made affecting the judgment and directing a new trial, and that can only regularly be done upon the payment of the costs incurred by the plaintiffs as respondents in the appeal. In addition to that, the defendant should pay the costs of the trial before the referee, of the appeal to the general term, and of the proceedings thereupon had. These costs should be paid within 20 days after the entry of the order to be made upon this decision, and the direction accordingly should be that the judgment entered upon the referee's report, and the report made by him, be set aside, and a new trial ordered, upon the payment by the defendant of all the costs and disbursements of both appeals and of the trial before the referee, and also $10 costs of opposing the motion, but with costs of this appeal to the defendant. If such payment shall not be made, then the order will be affirmed, with the usual costs, and the motion denied. All concur.